## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| SHARA CLAYBROOK, on behalf of herself and others similarly situated, | ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | No.: | 1:18-CV-29-TAV-CHS |
| SUNOCO GP LLC, a subsidiary of SUNOCO LP; M. KATE FITZPATRICK; and CHERYL A. SMITH, | ) ) ) ) ) | | |
| Defendants. | ) ) | | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Christopher H. Steger on February 23, 2023 [Doc. 52], in which Judge Steger recommends that the Court deny defendants' Motion to Vacate Arbitration Award [Doc. 34] and grant plaintiff's Motion to Confirm Arbitration Award and Award Interest [Doc. 45]. Defendants objected [Docs. 53, 54], and plaintiff responded [Doc. 55]. For the reasons that follow, defendants' objections [Docs. 53, 54] are **SUSTAINED in part and OVERRULED in part,** and the Court **ACCEPTS in part and REJECTS in part** the R&R [Doc. 52]. Defendants' motion to vacate the award [Doc. 34] will be **DENIED**, and plaintiff's motion to confirm the award [Doc. 45] will be **GRANTED**. The Arbitrator's Award will be **CONFIRMED** pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.

# I.  Background

The Court finds that the "Background" section contained in the R&R adequately details the relevant factual background in this case.  Moreover, neither party has raised an objection to the factual basis contained in the R&R.  *See Smith v. Detroit Fed'n of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987) (stating that "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review").  Consequently, the Court hereby adopts and incorporates the "Background" section in the R&R [Doc. 52, pp. 2–9].

In their motion, defendants argued that the Arbitrator acted with manifest disregard of the law by: (1) imposing sanctions against them for spoliation of evidence; (2) finding them liable on plaintiff's defamation and tortious interference with a business relationship claims; (3) failing to apply Tennessee's rebuttable presumption of good faith found in Tenn. Code Ann. § 50-1-105; and (4) awarding certain damages [*Id.* at 9].  In addressing what constitutes a manifest disregard of the law, Judge Steger pointed out that this standard does not encompass alleged erroneous findings of fact by the Arbitrator [*Id.* at 13].  Moreover, Judge Steger stated that courts refuse to consider challenges to an arbitrator's findings of fact where a complainant has attempted to clothe those challenges under the mantle of manifest disregard of the law [*Id.*].

Judge Steger then addressed whether Arbitrator Matthew Sweeney acted with manifest disregard of the law [*Id.*].  First, Judge Steger addressed defendants' contention that Arbitrator Sweeney failed to credit the testimony of Smith and Sunoco's IT expert,

2

Dana Grogan, that Sunoco acted reasonably to preserve data on the cell phones [*Id.* at 14]. Judge Steger found that this challenge relates to Arbitrator Sweeney's findings of fact and is not reviewable by the Court [*Id.*].

Second, Judge Steger addressed defendants' argument that, in his Final Award, Arbitrator Sweeney imposed adverse inferences against them as sanctions for spoliation and such inferences cannot be imposed, as a matter of law, unless there is a finding that a party intentionally spoliated evidence [*Id.*]. Judge Steger found that Arbitrator Sweeney did find that "Sunoco, intentionally, as a matter of policy or practice, failed both to search and to preserve two company owned phones used by two employees identified as having improperly provided defamatory information to Axalta, causing [plaintiff] to lose a job" [*Id.* at 14–15]. However, notwithstanding this finding, Judge Steger found that Arbitrator Sweeney did not impose an adverse inference on Sunoco and Smith for failure to preserve cellphone information [*Id.* at 15]. Instead, Judge Steger found that Arbitrator Sweeney imposed a different sanction by "permitting [plaintiff] to testify about what Ms. Patterson told her that caused Axalta to withdraw its job offer and an award of attorney's fees incident thereto." In addition, "[t]he Arbitrator decline[d] to invoke an irrebuttable presumption" [*Id.*].

Judge Steger then addressed defendants' argument that plaintiff's testimony about what Patterson told her was inadmissible hearsay [*Id.*]. Judge Steger found that Arbitrator Sweeney offered several well-reasoned bases to explain why his allowing plaintiff's testimony was not improper [*Id.*]. Specifically, Judge Steger looked at the Arbitration

3

Agreement, the Federal Rules of Evidence, the AAA Employment Arbitration Rules, and Tennessee common law to find that Arbitrator Sweeney's admission of the testimony was sound [*Id.* at 15–16]. Moreover, Judge Steger concluded that Arbitrator Sweeney's sanction was appropriate under Federal Rule of Civil Procedure 37(e)(1) because allowing plaintiff to testify as to what Patterson said Ruddy had told her about plaintiff was a remedy no greater than necessary to cure the prejudice [*Id.* at 16–17].

Contrary to defendants' assertion, Judge Steger further found that Arbitrator Sweeney's solution to the loss of the cellphone information was not an adverse inference [*Id.* at 17]. Instead, while Arbitrator Sweeney did make a number of negative inferences about defendants, Judge Steger concluded that he did so from the evidence as a whole, not as a sanction. Furthermore, Judge Steger found that even if Arbitrator Sweeney did make a mistake in his application of the Federal Rules of Evidence, the Arbitration Agreement, and Tennessee law, it was a "mere misapplication" and not the type of "outrageous conduct" as would constitute a manifest disregard of the law [*Id.*].

Judge Steger next examined whether Arbitrator Sweeney's award of damages was made in manifest disregard of the law [*Id.* at 22]. Defendants asserted that Arbitrator Sweeney acted with manifest disregard of the law by awarding plaintiff $16,400 for loss of severance pay, $98,659 in backpay for the time plaintiff was unemployed after she left Quantum until she was hired at Aquarius Staffing, and $500,000 in punitive damages [*Id.*].

4

First, Judge Steger analyzed Arbitrator Sweeney's award of severance pay in the amount of $16,400 [*Id.* at 23]. Defendants asserted that Arbitrator Sweeney acted with manifest disregard of the law when he made that award because, under well-settled principles of contract law, plaintiff was not entitled to the benefits of the severance agreement since she was unwilling to agree to all of its terms. Judge Steger stated that if plaintiff was proceeding under a breach of contract claim, he would agree with defendants, but plaintiff was not proceeding under this type of claim. Instead, Judge Steger found that $16,400 in compensatory damages was awarded as damages for defendants' tortious conduct [*Id.*]. In other words, Judge Steger found that Arbitrator Sweeney could and did find that plaintiff's loss of severance pay constituted an actual economic loss naturally resulting from defendants' wrongful conduct, and as such, this economic loss was properly awarded as damages to plaintiff pursuant to Tennessee tort law [*Id.* at 23–24]. Further, even if he concluded that Arbitrator Sweeney made a mistake in the application of Tennessee law, Judge Steger did not find that such a mistake amounted to a manifest disregard of Tennessee law [*Id.* at 24].

Second, Judge Steger examined Arbitrator Sweeney's award of backpay in the amount of $98,659 [*Id.*]. Defendants argued that plaintiff voluntarily resigned from Quantum, and therefore, as a matter of law, she was not entitled to backpay from that point onward because she failed to mitigate her damages [*Id.*]. In making this argument, defendants relied on cases brought under state and federal employment law statutes [*Id.* at 24–25]. However, Judge Steger found that those statutes are not at issue in this case

5

[*Id.* at 25].  Instead, Judge Steger asserted that Tennessee's common law of torts controls this damages issue.  Based on Tennessee common law, Judge Steger found that absent defendants' misconduct, plaintiff would have been hired by Axalta and would have been eligible for FMLA-type leave so that she could have taken care of her mother when the need arose [*Id.*].  Judge Steger continued that because of defendants' misconduct, the job offer at Axalta was withdrawn, and while plaintiff attempted to mitigate her losses by going to work for Quantum, that company's benefits package did not include FMLA-type leave, so plaintiff was forced to resign from her job so that she could take care of her mother [*Id.* at 25–26].

Judge Steger further reasoned that the question before Arbitrator Sweeney was whether plaintiff unreasonably enhanced her damages by leaving her job at Quantum to care for her terminally ill mother, and Arbitrator Sweeney concluded that she did not [*Id.* at 26].  Arbitrator Sweeney found that plaintiff's loss of income from the time of her resignation from Quantum to her employment with Aquarius Staffing was a natural consequence of defendants' tortious conduct.  Judge Steger stated that different judges and arbitrators might reach different conclusions on this issue; however, he found that Arbitrator Sweeney did not act with manifest disregard of Tennessee common law by awarding plaintiff $98,659 in backpay [*Id.*].

Third, Judge Steger examined Arbitrator Sweeney's award of punitive damages [*Id.*].  Defendants argued that Arbitrator Sweeney acted with manifest disregard of the law because the punitive damages awarded were grossly excessive [*Id.*].  Judge Steger

6

explained that Arbitrator Sweeney meticulously explained his reasons for the award, discussing 26 factors and the extent to which each factor applied and its bearing on the amount of punitive damages [*Id.* at 27]. Arbitrator Sweeney then awarded punitive damages on the basis of these factors, including each defendant's degree of culpability, the degree of harm done to plaintiff, and each defendant's ability to pay punitive damages [*Id.*]. Judge Steger noted that in support of their argument, defendants cited to several cases where the punitive damages awarded were four to twelve times less than those awarded by Arbitrator Sweeney in cases involving "comparable" conduct [*Id.*]. However, Judge Steger stated that the issue is not whether different courts have awarded greater or lesser amounts of punitive damages for similar conduct [*Id.* at 27–28]. Instead, the issue is whether the amount of Arbitrator Sweeney's punitive award was so outrageous as to constitute a manifest disregard of Tennessee common law, and Judge Steger found that it was not [*Id.* at 28]. Judge Steger concluded that the evidence relied upon by the Arbitrator lends support to his decision [*Id.*]. Judge Steger stated that Arbitrator Sweeney explained in detail how he arrived at punitive damages and the amount he determined to be appropriate. Further, Judge Steger noted that Arbitrator Sweeney's punitive damages award totaling $500,000 falls within Tennessee's own cap on punitive damages. For all these reasons, Judge Steger found Arbitrator Sweeney's award of punitive damages was not made in manifest disregard of the law [*Id.*].

Finally, Judge Steger analyzed plaintiff's motion to affirm the Arbitration Award [*Id.* at 30]. Judge Steger stated that because he found no basis to grant defendants' motion

to vacate or modify the Arbitration Award, he recommends that the Arbitration Award be affirmed. In addition to requesting that the Arbitration Award be affirmed, plaintiff also requested (1) post-award, prejudgment interest and (2) post-judgment interest [*Id.*]. Applying Tennessee law, Judge Steger found that prejudgment interest is appropriate to make plaintiff whole and to ensure that she is not penalized by the Court's delay in entering a judgment in this matter [*Id.* at 31]. Judge Steger found that as to plaintiff's claims for defamation and tortious interference and the compensatory damages awarded pursuant to these claims, the Interim Award was final. He stated it was also final as to the attorney's fees awarded to plaintiff in connection with her Motion for Sanctions for spoliation of evidence [*Id.*].

Accordingly, Judge Steger recommends that prejudgment interest on the award of compensatory damages and attorney's fees begin to accrue on November 30, 2020 [*Id.*]. However, because litigation costs and expenses were yet to be finalized as of the date the Interim Award was entered, Judge Steger recommends that interest on such expenses and costs accrue as of the date the Final Award was entered [*Id.* at 31–32].

As to the rate of prejudgment interest, Judge Steger stated that under Tennessee law, up to 10% per annum may be awarded [*Id.* at 32]. Judge Steger utilized 28 U.S.C. § 1961, which addresses post-judgment interest, as a guide to determine a fair prejudgment interest rate to apply. He then stated that the average rate from November 30, 2020, until today was 6.2%, and he found this rate to be reasonable and fair, neither miserly nor a windfall to plaintiff. Accordingly, Judge Steger recommends that post-award, prejudgment interest

8

accrue at 6.2% per annum and that post-judgment interest be awarded as of entry of judgment by this Court pursuant to 28 U.S.C. § 1961 [*Id.*].

## II.    Standard of Review

The Court reviews *de novo* those portions of the R&R to which defendants have objected.    28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).    Accordingly, the Court considers the R&R, the parties' motions, the parties' underlying and supporting briefs, defendants' objections, and plaintiff's response to those objections, all in light of the applicable law.

## III.    Analysis

Defendants have raised several objections to Judge Steger's R&R [Doc. 54]. However, before addressing those objections, the Court notes that to the extent defendants' objections to Judge Steger's recommendation on their request to vacate the Arbitration Award are merely resubmission of the arguments in their initial motion [Compare Doc. 54 with Doc. 35], such are not proper objections.    Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious.    *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)).    If "objections merely restate the arguments asserted in [a party's] earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived."    *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich.

9

2004)). Thus, to the extent that defendants' objections merely "copy and paste" the arguments presented to the magistrate judge, their objections are **OVERRULED**.

### A. Spoliation and Subsequent Adverse Inferences

Defendants first object to Judge Steger's recommendation regarding spoliation and the subsequent adverse inferences granted by Arbitrator Sweeney [Doc. 54, p. 7]. They maintain that Judge Steger is mistaken when he concludes that their argument on this point goes to a finding of fact from the Arbitrator. Instead, defendants contend that the Arbitrator failed to consider the legal requirements regarding spoliation as well as the case law requiring intent for adverse inference instructions. Defendants assert that this is a manifest disregard of the law by the Arbitrator, not a factual disagreement [*Id.*].

Plaintiff responds that the Arbitrator concluded that Sunoco, through its representative Lynn Lambrecht, was not credible and that Sunoco did act intentionally in intentionally failing to preserve evidence [Doc. 55, p. 5]. The Arbitrator also concluded that Sunoco did not employ reasonable practices in terms of preserving the relevant evidence and found that it intentionally failed to search and preserve relevant evidence [*Id.* at 5–6]. Plaintiff agrees that these are findings of fact that cannot be disturbed [*Id.* at 6].

In finding that defendants' challenge related to Arbitrator Sweeney's findings of fact, Judge Steger was referencing defendants' argument that Arbitrator Sweeney failed to credit Smith and Sunoco's IT expert, Dana Grogan [Doc. 52, p. 14]. Judge Steger stated, "Manifest disregard of the law does not encompass alleged erroneous findings of fact by the arbitrator" [*Id.* at 13]. The Court agrees. "[I]t is well settled that the Court must respect

10

the arbitrator's credibility determinations." *In re Romanzi*, No. 18-cv-11375, 2020 WL 7975570, at *5 (E.D. Mich. Nov. 30, 2020) (citing *Paulstra CRC Corp. v. U.S. Workers of Am.*, No. 98-1688, 1999 WL 777350, at *6 (6th Cir. Sept. 21, 1999)).  In fact, "[i]t is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is well-established that 'a federal court may not conduct a reassessment of the evidentiary record.'"  *Id.* (quoting *The Coffee Beanery, Ltd. v. WW L.L.C.*, No. 06-10408, 2007 WL 2335135, at *2 (E.D. Mich. Aug. 16, 2007)).[1]  Thus, the Court agrees with Judge Steger's finding that the Arbitrator's credibility determination with regards to defendants' expert is a finding of fact that is not reviewable by this Court.  As a result, defendants' first objection is **OVERRULED**.

### B.    Sanctions

Second, defendants object to Judge Steger's analysis of whether sanctions were appropriate and whether adverse inferences constituted the sanctions imposed [Doc. 54, p. 12].  They argue that "[i]nstead of seriously grappling with the issue of sanctions, [] Judge Steger simply points to one decision which holds the totality of the circumstances must be analyzed to determine if sanctions are appropriate, but he subsequently fails to analyze whether such an approach confirms the Award."  Furthermore, defendants argue that Judge Steger's conclusion that the Arbitrator made the inferences "from the evidence as a whole, not as a sanction" contradicts the facts [*Id.*].  They contend that the sanctions

---

[1]   The Court finds unpersuasive defendants' reliance on Ninth Circuit case law for the proposition that an arbitrator's factual findings are reviewable [*See* Doc. 54, p. 6].

11

order specifically mentions the inferences, and the Arbitrator clearly relied upon them in forming his conclusions [*Id.* at 12–13].  Because the Arbitrator manifestly disregarded the law in doing so, defendants argue that the arbitration award should be vacated [*Id.* at 13].

Plaintiff responds that, in his analysis, Judge Steger pointed to the Arbitrator's findings that defendants acted intentionally in failing to preserve evidence, that no adverse inference was imposed, and that the sanction imposed could have been imposed without such a sanction under Federal Rule of Evidence 807 [Doc. 55, p. 6].  Moreover, plaintiff points out that Judge Steger recognized that the Arbitrator was not bound by the Federal Rules of Evidence, that the AAA rules do not prohibit hearsay evidence, and that Tennessee case law would permit such a finding without intentional misconduct [*Id.* at 6–7].  As to defendants' argument that adverse inferences were imposed as sanctions, plaintiff responds that Arbitrator Sweeney made clear that he did not implement any adverse inferences, and no such inferences were necessary [*Id.* at 6 n.2].

The Court disagrees with defendants' contention that Judge Steger did not "seriously grappl[e]" [Doc. 54, p. 12] with the issue of sanctions.  Instead, Judge Steger looked at several authorities to confirm that Arbitrator Sweeney did not manifestly disregard the law when he sanctioned defendants by allowing plaintiff to testify as to what Patterson told her [Doc. 52, pp. 15–17].  Judge Steger first considered the Arbitration Agreement and found that Arbitrator Sweeney was not bound by the Federal Rules of Evidence under its terms [*Id.* at 15].  Second, Judge Steger stated that plaintiff's testimony could have been allowed under the residual exception contained in Federal Rule of

Evidence 807, finding that plaintiff's testimony contained sufficient guarantees of trustworthiness and was more probative on the point offered than any other evidence plaintiff could have obtained through reasonable efforts [*Id.* at 15–16]. Third, Judge Steger looked to the AAA Employment Arbitration Rules and found that they do not prohibit hearsay evidence [*Id.* at 16].

Fourth, Judge Steger found that Arbitrator Sweeney's sanction was appropriate under Federal Rule of Civil Procedure 37(e)(1) [*Id.*]. Judge Steger considered Arbitrator Sweeney's conclusion that there were other text messages from Fitzpatrick and Smith to Ruddy on Fitzpatrick's and Smith's cellphones that were not produced by defendants [*Id.* at 17]. In addition, Judge Steger looked at Arbitrator Sweeney's finding that plaintiff was prejudiced because she was not able to have the cellphones forensically searched to determine what other evidence they contained and to use that information to examine Fitzpatrick, Smith, and Ruddy. Judge Steger concluded that allowing plaintiff to testify as to what Patterson said Ruddy had told her about plaintiff was a remedy no greater than necessary to cure the prejudice [*Id.*]. Based on the authority cited, the Court finds that Judge Steger did "seriously grappl[e]" [Doc. 54, p. 12] with the issue of sanctions and pointed to more than a single case to support his conclusion.

In addition to the authority already cited, Judge Steger also looked at Tennessee common law to find that courts are given inherent authority to fashion appropriate sanctions where a party breaches his duty to preserve evidence, even without a finding of intentional spoliation [Doc. 52, p. 16]. To the extent defendants object to this portion of

13

Judge Steger's analysis, the Court agrees with Judge Steger that under Tennessee common law, Arbitrator Sweeney did not manifestly disregard the law by imposing the sanction of allowing plaintiff to testify as to what Patterson told her. In making this finding, Judge Steger considered the totality of the circumstances surrounding the sanction. Although Judge Steger did not explicitly list the relevant factors in deciding what sanction should be imposed, *see Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 746–47 (Tenn. 2015),[2] Judge Steger implicitly considered all those factors in his analysis.

First, Judge Steger considered the culpability of the spoliating party, stating that Arbitrator Sweeney did find that Sunoco intentionally failed both to search and preserve the two company-owned phones used by the two employees identified as having improperly provided defamatory information [Doc. 52, pp. 14–15]. This finding also goes toward consideration of "whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation." *Tatham*, 473 S.W.3d at 747. Judge Steger further considered the degree of prejudice plaintiff suffered, citing to Arbitrator Sweeney's finding that plaintiff was not able to have the cellphones forensically searched to determine what other evidence they contained and to use that information to examine Fitzpatrick, Smith, and Ruddy

---

[2] The factors that the Tennessee Supreme Court has identified as relevant to this analysis include: "(1) the culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent; (2) the degree of prejudice suffered by the non-spoliating party as a result of the absence of the evidence; (3) whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation; and (4) the least severe sanction available to remedy any prejudice caused to the non-spoliating party." *Tatham*, 473 S.W.3d at 747.

14

[Doc. 52, p. 17]. Moreover, Judge Steger considered the final factor by finding that allowing plaintiff to testify as to what Patterson told her was a remedy no greater than necessary to cure the prejudice [*Id.*]. Therefore, based on the totality of the circumstances, the Court agrees with Judge Steger's finding that Arbitrator Sweeney's sanction of allowing plaintiff to testify as to what Patterson told her was not a manifest disregard of the law.

Defendants also take issue with Judge Steger's finding that Arbitrator Sweeney's solution to the loss of the cellphone information was not an adverse inference. Judge Steger stated that "[w]hile Arbitrator Sweeney did make a number of negative inferences about [d]efendants—such as that they lied about the information Fitzpatrick and Smith gave to Ruddy and for what purpose—he did so from the evidence as a whole, not as a sanction" [Doc. 52, p. 17]. The Court agrees with Judge Steger that Arbitrator Sweeney's negative inferences about defendants were not imposed as sanctions. In fact, defendants point to Arbitrator Sweeney's sanctions order to argue that the inferences were used as sanctions [Doc. 54, pp. 12–13]. However, in the sanctions order, Arbitrator Sweeney explicitly stated, "the Arbitrator will reserve ruling until the conclusion of the evidentiary hearing as to whether he should infer one or more of the following facts as a sanction for spoliation" [Doc. 54-8, p. 20]. Subsequently, in the Final Award, Arbitrator Sweeney stated:

> The sanction which has been imposed, permitting [plaintiff] to testify about what Ms. Patterson told her that caused Axalta to withdraw its job offer and an award of attorney's fees incident thereto, are sufficient. The Arbitrator declines to invoke an irrebuttable presumption as well. [T]he evidence is sufficient without reliance on the requested inference to prove that Smith and

15

Fitzpatrick collusively committed defamation and tortious interference injuring [plaintiff]. There is no need to rely on an evidentiary inference.

[Doc. 54-1, p. 21].

Thus, the Court agrees with Judge Steger's finding that the negative inferences drawn by Arbitrator Sweeney were not imposed as sanctions. In addition, the inferences that Arbitrator Sweeney did draw were warranted in deciding the proper sanction to impose against defendants for spoliation of evidence. *See Tatham*, 473 S.W.3d at 747. As a result, defendants' second objection to the R&R is **OVERRULED**.

### C. Arbitrator's Reliance on His Own Policy Choices

Third, defendants object to Judge Steger's failure to analyze the fact that the Arbitrator relied on his own policy choices in analyzing the means and methods available to preserve evidence [Doc. 54, p. 13]. Specifically, defendants contend that instead of giving deference to their expert's testimony about data preservation and "her detailed and uncontroverted explanation of Sunoco's inability to retain direct phone data and the steps it took for alternative preservation, the Arbitrator searched random Internet articles and relied on them for his conclusion that [Sunoco] could have used other means/methods to preserve text messages." Defendants argue that the Arbitrator erroneously substituted his own policy choices for those of Sunoco and, in doing so, far exceeded the scope of his authority. Further, defendants maintain that Judge Steger failed to analyze this issue [*Id.*]. Plaintiff did not respond to this objection.

16

The Court first notes that defendants' objection risks crossing the line into reviewing the Arbitrator's credibility determination of their expert, which the Court has already declined to do for the reasons stated in the analysis of defendants' first objection. Second, the part of Arbitrator Sweeney's Final Award in which he cites to the "random Internet articles" [Doc. 54, p. 13] is contained in his analysis of punitive damages [Doc. 54-1, pp. 26, 30–31]. Specifically, Arbitrator Sweeney cites to these articles in a footnote to his analysis of the statutory factors with regards to Sunoco, specifically, "the nature and reprehensibility of the defendant's wrongdoing" [*Id.* at 30–31].

An arbitrator acts with manifest disregard of the law if "'(1) the applicable legal principle [at issue] is clearly defined and not subject to reasonable debate; and (2) the arbitrator[] refused to heed that legal principle.'" *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (quoting *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000)). "A mere error in interpretation or application of the law is insufficient. . . . Rather, the decision must fly in the face of clearly established legal precedent." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). "[O]utrageous circumstances" are required before a court can say an arbitrator acted with manifest disregard of the law. *Id.*

Without citing to any case law, defendants have not demonstrated that the Arbitrator's citation to these Internet articles "fl[ies] in the face of clearly established legal precedent." *Id.* (quoting *Jaros*, 70 F.3d at 421). In addition, the Court is unaware of the weight to which Arbitrator Sweeney accorded these articles in his ultimate decision to

17

award punitive damages, especially in light of the fact that the articles were cited in a footnote as opposed to the main opinion [*See* Doc. 54-1, p. 31 n.25]. *Cf. United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) (where the court declined to hear an argument because it was contained only in a footnote).

Moreover, even if Arbitrator Sweeney did accord some weight to these articles in his rendering his decision, and he was mistaken in doing so, Arbitrator Sweeney's analysis, independent of the Internet articles, is sufficient to support his award of punitive damages and was not the type of "outrageous conduct" that would constitute a manifest disregard of the law. Specifically, in considering whether to award punitive damages, Arbitrator Sweeney listed and analyzed 11 other statutory factors with regards to Sunoco [Doc. 54-1, pp. 30–33]. Moreover, when analyzing the nature and reprehensibility of Sunoco's wrongdoing, Arbitrator Sweeney thoroughly reviewed the testimony of Lynn Lambrecht, who testified as a corporate representative, and found that Sunoco recklessly supervised Fitzpatrick and Smith and intentionally failed to search for or preserve data on its own cell phones [*Id.* at 30–31]. Thus, the Court does not find that Arbitrator Sweeney's reliance on the Internet articles, if any, was a manifest disregard of the law, and defendants' third objection is **OVERRULED**.

### D. Arbitrator's Award of Damages

Fourth, defendants object to Judge Steger's finding that the Arbitrator properly awarded severance pay, backpay, and punitive damages to plaintiff [Doc. 54, pp. 13, 15, 17]. The Court will address defendants' objection as to each category of damages.

18

### 1. Severance Pay

Defendants maintain that Judge Steger states in conclusory fashion that the Arbitrator found that plaintiff is entitled to severance pay, without providing any analysis [Doc. 54, p. 13]. In doing so, defendants assert that Judge Steger failed to consider the case law governing basic principles of contract law in Tennessee [*Id.* at 13–14].

Plaintiff responds that Judge Steger did analyze this issue and reached the correct conclusion because plaintiff's loss of severance pay naturally resulted from defendants' wrongful conduct [Doc. 55, p. 7]. She maintains that had defendants not engaged in tortious conduct toward her, she could have signed the release of claims and received the promised severance package [*Id.*].

The Court disagrees with defendants' contention that Judge Steger provided no analysis to support his finding that plaintiff was properly awarded severance pay. Judge Steger stated that if plaintiff was proceeding on a breach of contract claim, he would have agreed with defendants' contention that plaintiff was improperly awarded severance pay [Doc. 52, p. 23]. However, Judge Steger stated that plaintiff was not proceeding on a breach of contract claim and recited Arbitrator Sweeney's findings as to why plaintiff was entitled to severance pay on the claims she had asserted. Judge Steger explained that based on Arbitrator Sweeney's findings, he could and did find that plaintiff's loss of severance pay constituted "an actual economic loss naturally resulting from [d]efendants' wrongful conduct" [*Id.*]. Based on this finding, Judge Steger concluded that economic loss was properly awarded as damages to plaintiff pursuant to Tennessee tort law, and even if

19

Arbitrator Sweeney made a mistake in the application of such law, the mistake did not amount to manifest disregard of the law [*Id.* at 23–24].

Accordingly, Judge Steger did undertake analysis of whether plaintiff was properly awarded severance pay. The fact that Judge Steger did not consider defendants' citations to Tennessee contract law does not void his analysis on the issue. Judge Steger explicitly stated that the reason he did not consider defendants' citations to Tennessee contract law was because plaintiff was not proceeding under a breach of contract claim. Because plaintiff did not pursue a breach of contract claim, the Court agrees with Judge Steger's resolution of the issue and his subsequent application of Tennessee tort law as opposed to contract law. As a result, defendants' objection to Judge Steger's findings as to severance pay is **OVERRULED**.

### 2. Backpay

As to backpay, defendants object to Judge Steger's recommendation granting backpay for $98,659.00, arguing that Judge Steger's holding that plaintiff's resignation from her subsequent employment was not voluntary is contradicted by the evidence and case law [Doc. 54, pp. 15–16]. Plaintiff responds that the Final Award and the R&R were supported by case law showing that under these circumstances and with the facts found by the Arbitrator, back pay would not be cut off unless plaintiff had lost her job through willful misconduct [Doc. 55, p. 7].

In the R&R, Judge Steger stated that the cases on which defendants rely are brought under state and federal employment law statutes [Doc. 52, pp. 24–25]. Judge Steger found

20

that those statutes are not at issue in this case, and Tennessee common law of torts controls the damages issue [*Id.* at 25]. Because plaintiff has not pursued a breach of contract claim, the Court agrees with Judge Steger's analysis and will apply Tennessee tort law.

In the context of Tennessee tort law, "one who is injured by the wrongful or negligent act of another, whether by tort or breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage[.]" *Montepeque v. Adevai*, No. E2009–01871, 2010 WL 3025541, at *11 (Tenn. Ct. App. Aug. 4, 2010) (internal quotation marks omitted). "However, an injured party is excused from a duty to mitigate damages where such a duty would be unduly burdensome or impossible." *Id.* (internal quotation marks omitted). In *Montepeque*, the Tennessee Court of Appeals gave great deference to the trial court's findings based on witness credibility and concluded that in light of the plaintiff's testimony, the trial court did not err in excusing the duty to mitigate damages. *Id.* at *12.

As mentioned previously, the Court will not reassess Arbitrator Sweeney's findings of fact. *See In re Romanzi*, 2020 WL 7975570, at *5; *see also Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) ("Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error.") (internal quotation marks omitted). Based on his findings of fact, Arbitrator Sweeney found that plaintiff's resignation was not voluntary [Doc. 54-1, p. 22 n.14]. He stated that in July 2018, plaintiff requested time off to care for her mother who was in her final stages of cancer treatment and had fallen and broken her hip

21

[*Id.* at 11]. While the Axalta position plaintiff was offered provided immediate eligibility for FMLA leave, she was not yet eligible to receive such leave at Quantum because she had not been there long enough, and Quantum was not able to accommodate her requests because she was the company's only HR professional. As a result, she resigned to take care of her mother, who died on September 18, 2018 [*Id.*].

Based on Arbitrator Sweeney's review of the record, this Court will not disturb the credit he gave to plaintiff's reason for resigning from Quantum. Accepting the facts as stated by Arbitrator Sweeney as true, the Court agrees that under the circumstances, the duty to mitigate damages would have been unduly burdensome for plaintiff in light of the need to take care of her mother and her ineligibility for FMLA leave at Quantum. Therefore, the Court agrees with Judge Steger's analysis and finds that Arbitrator Sweeney did not manifestly disregard the law by excusing plaintiff's duty to mitigate damages and awarding backpay. Thus, defendants' objection is **OVERRULED**.

### 3. Punitive Damages

As to punitive damages, defendants object to Judge Steger's recommendation confirming the Arbitrator's imposition of half a million dollars in punitive damages, arguing that such is excessive compared to other cases with more egregious facts and amounts to a gross miscalculation [Doc. 54, p. 17]. Defendants maintain that Judge Steger incorrectly states that defendants' challenge to the punitive damages award is a "challenge to Arbitrator Sweeney's finding of facts." However, defendants argue that the awarding of punitive damages involves a legal analysis, as to the amount and requirements, which goes

22

beyond a simple factual inquiry [*Id.*].  Defendants also argue that Judge Steger is "plainly wrong to conclude that the Arbitrator's award is not outrageous where it is four times higher than a malicious letter sent to immigration services, twelve times higher than a malicious letter sent to a profession's governing agency, and two times higher than a false rape accusation which was posted online" [*Id.* at 21].  In light of prior court decisions confirming these numbers, defendants contend that the Arbitrator's punitive damages award greatly exceeded his authority and manifestly disregarded applicable law [*Id.*].

Plaintiff responds that Tennessee law concerning punitive damages requires consideration of a number of facts, all of which were determined and considered by the Arbitrator [Doc. 55, p. 8].  Plaintiff cited a number of Tennessee cases involving punitive damages awards greater than the one assessed in this case for comparable conduct.  Thus, plaintiff contends that Judge Steger properly analyzed whether the Arbitrator's award, given the facts he found, was so outrageous as to constitute a manifest disregard of Tennessee common law.  Plaintiff maintains that the award of punitive damages was not a manifest disregard of the law [*Id.*].

In finding that defendants' challenge related to Arbitrator Sweeney's findings of fact, Judge Steger was referencing defendants' argument that there was no proof that they acted with actual malice or intentionality [Doc. 52, pp. 26–27].  Judge Steger stated, "Manifest disregard of the law does not encompass alleged erroneous findings of fact by the arbitrator" [*Id.* at 13].  As stated earlier, the Court agrees.  "[I]t is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is

23

well-established that 'a federal court may not conduct a reassessment of the evidentiary record.'" *In re Romanzi*, 2020 WL 7975570, at *5 (quoting *The Coffee Beanery*, 2007 WL 2335135, at *2).

By arguing that there was no proof that they acted with actual malice or intentionality, defendants once again ask the Court to undertake the role of the Arbitrator by weighing the evidence, which the Court cannot do. *See Samaan*, 835 F.3d at 600. Thus, the Court agrees with Judge Steger's finding that Arbitrator Sweeney's weighing of the evidence with regards to defendants' mental state is a finding of fact that is not reviewable by this Court.

Moreover, in making a finding as to punitive damages, Judge Steger considered defendants' citation to cases demonstrating that the amount of punitive damages awarded in this case was more than those awarded in cases involving comparable conduct [Doc. 52, p. 27]. However, Judge Steger stated that "the issue [] is not whether different courts have awarded greater or lesser amounts of punitive damages for similar conduct" [*Id.* at 27–28]. Instead, he stated, "The issue [] is whether the amount of Arbitrator Sweeney's punitive award was so outrageous as to constitute manifest disregard of Tennessee common law" [*Id.* at 28]. Judge Steger then concluded that the punitive damages award does not represent a manifest disregard of Tennessee common law, and the evidence relied upon by the Arbitrator supports his decision [*Id.*].

The Court agrees with Judge Steger's analysis. As Judge Steger explained, Tenn. Code Ann. § 29-39-104(a)(4) requires the consideration of a number of factors in

24

determining the amount of punitive damages to be awarded [Doc. 52, p. 27]. Arbitrator Sweeney analyzed 26 factors, explaining the extent to which each factor applied to this case and assessed the effect each factor had on the amount of punitive damages to be awarded [Doc. 54-1, pp. 26–33]. Arbitrator Sweeney then crafted an award of punitive damages on the basis of these factors [*Id.* at 33–35]. The Court finds Arbitrator Sweeney's analysis of punitive damages to be in accordance with Tennessee law and not a manifest disregard of the law. *See Hudson, Holeyfield & Banks, G.P. v. MNR Hosp., LLC*, No. W2019-00123, 2020 WL 4577483, at *11 (Tenn. Ct. App. Aug. 7, 2020) (stating any order awarding punitive damages must address the statutory factors listed in Tenn. Code Ann. § 29-39-104).[3] In addition, defendants have not pointed the Court to any authority stating that comparable cases must be considered when awarding punitive damages. Based on the foregoing, defendants' objection to Judge Steger's findings as to punitive damages is **OVERRULED**.

### E. AAA Administrative Fees and Arbitrator's Fee

Fifth, defendants object to Judge Steger's inclusion of $2,950.00 for AAA administrative fees and $41,342.50 for the Arbitrator's fee as part of his recommendation

---

[3] The Court notes that the cases defendants have cited were all decided prior to the enactment of Tenn. Code Ann. § 29-39-104 in 2011 [*See* Doc. 54, pp. 20–21]. *See Hudson, Holeyfield & Banks*, 2020 WL 4577483, at *9–10 (stating that the only Tennessee appellate court applying Tenn. Code Ann. § 29-39-104 is *Overton v. Westgate Resorts, Ltd., L.P.*, No. E2014-00303, 2015 WL 399218, at *7 (Tenn. Ct. App. Jan. 30, 2015)).

The Court also notes that the Sixth Circuit has found Tenn. Code Ann. § 29-39-104 to be "unenforceable [only] to the extent that it purports to cap punitive damage awards[,]" an issue that is not presently before the Court. *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 366 (6th Cir. 2018).

25

of damages against defendants [Doc. 54, pp. 21–22]. Defendants report that they have already paid the fees for both AAA and Arbitrator Sweeney [*Id.* at 22; Doc. 54-14]. As a result, defendants argue that the damages award is improper and should be overruled [Doc. 54, p. 22]. Plaintiff responds that defendants are correct that these amounts were previously paid by defendants during the pendency of the arbitration [Doc. 55, p. 5]. As a result, plaintiff agrees these amounts should not be part of the final judgment in this case [*Id.*].

In light of the parties' agreement that these amounts were already paid, defendants' objection is **SUSTAINED**, and the Court will reduce the final judgment by these amounts.

### F.    Prejudgment Interest

Sixth, defendants object to Judge Steger's imposition of a 6.2% per annum rate of prejudgment interest [Doc. 54, p. 22]. They contend that from November 30, 2020, through June 30, 2022, the percent per annum was 5.25% for 19 months, 6.75% for six months, and has been at 9.5% for just two months [*Id.*]. Accordingly, defendants state the average rate (average per month as opposed to year) would make the correct rate 5.89% [*Id.*].

Plaintiff responds that given the delay that will be associated with defendants' objections to the R&R, one cannot assume that the current interest rate of 9.5% will only impact this calculation for two months [Doc. 55, p. 8]. Further, she states that surveying past rates to find an average was not an approach that Judge Steger was required to take [*Id.*]. Plaintiff maintains that Judge Steger could have implemented the current rate of

9.5%, but instead, he invoked a rate that was reasonable and fair and that did not result in a windfall to plaintiff [*Id.* at 8–9].

Plaintiff continues that the approach suggested by defendants in terms of employed weighted interest rates depending upon their months of effectiveness would not be appropriate unless the interest awarded were also compounded [*Id.* at 9]. If the award of interest were compounded, plaintiff contends that the rate suggested by defendants would still yield a higher outcome than the simple interest at a higher averaged rate imposed by Judge Steger. Plaintiff notes that defendants have not cited any law that would compel a different conclusion [*Id.*].

Moreover, plaintiff contends that defendants originally filed their motion to vacate on July 29, 2021 [*Id.*]. Between that date and the date of issuance of the R&R on February 23, 2023, plaintiff states that defendants took no action to inquire about the status of their motion or the case. As a result, plaintiff maintains that defendants can hardly complain that the applicable interest rate is now higher and negatively impacts them. Given the high threshold defendants are required to clear to overturn an arbitration award, plaintiff asserts that they could have avoided an award of interest completely had they taken responsibility for the judgment when it was rendered [*Id.*].

In Tennessee, "Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, . . . *may* be awarded by courts . . . in accordance with the principles of equity at *any rate* not in excess of a maximum effective rate of ten percent (10%) per annum[.]" Tenn. Code Ann. § 47-14-123 (emphasis added). Thus, the language of this statute gives

27

the Court discretion in deciding whether to award prejudgment interest and, if such an award is made, what rate to set within the limit imposed. In addition, "there is certainly support for courts using the rate prescribed for post-judgment interest under 28 U.S.C. § 1961 for prejudgment interest." *Krystal Co. v. Caldwell*, No. 1:11–CV–81, 2012 WL 876793, at *11 (E.D. Tenn. Mar. 13, 2012). The Sixth Circuit has stated that while "district courts may be influenced by the congressional wisdom expressed in the amendment of 28 U.S.C. § 1961[], we do not think that they are invariably compelled to adopt the statutory postjudgment rate in determining prejudgment interest." *E.E.O.C. v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984).

Here, the Court agrees with Judge Steger's analysis and finds that a 6.2% per annum rate of prejudgment interest is "reasonable and fair, neither miserly nor a windfall to [p]laintiff" [Doc. 52, p. 32]. Judge Steger was permitted to use § 1961 as a guide in calculating a rate of prejudgment interest, but he was not bound by it. *See Wooster Brush*, 727 F.2d at 579. In addition, in accordance with Tennessee law, Judge Steger's proposed rate was recommended with the principles of equity in mind, and the rate does not exceed the maximum effective rate of 10% per annum. *See* Tenn. Code Ann. § 47-14-123. As a result, the Court will not disturb Judge Steger's calculations. The Court further notes that prior to filing their objections, defendants did not suggest a rate for prejudgment interest [Doc. 52, p. 31]. Thus, the Court will not now entertain defendants' proposed calculations and suggested rate, neither of which are supported by citation to authority. Therefore, defendants' sixth objection is **OVERRULED**.

### G. Affirmative Defenses

Seventh, defendants object to Judge Steger's recommendation regarding their affirmative defenses [Doc. 54, p. 22]. Defendants argue that Judge Steger's contention that the matter is a factual issue which is not reviewable is mistaken [*Id.*]. Instead, defendants contend that the Arbitrator misapplied the statute and case law they have cited [*Id.* at 22–26]. As a result, defendants argue that this is a manifest disregard of the law by the Arbitrator, not a factual disagreement [*Id.* at 22].

Plaintiff responds that in assessing defendants' claim, Judge Steger reviewed the appropriate Tennessee laws [Doc. 55, p. 9]. He then concluded that the Arbitrator found facts that met the requirements of those laws, and thus, he did not act in manifest disregard of them [*Id.* at 9–10]. Plaintiff states that this is exactly what a magistrate judge should review in an appeal involving an arbitration award [*Id.* at 10]. Plaintiff contends that it was not Judge Steger's job to take issue with the facts found by the Arbitrator [*Id.*].

In finding that defendants' challenge related to Arbitrator Sweeney's findings of fact, Judge Steger was referencing defendants' argument that Arbitrator Sweeney manifestly disregarded the law by failing to apply Tennessee's rebuttable presumption of good faith found in Tenn. Code Ann. § 50-1-105 [Doc. 52, pp. 21–22]. As mentioned before, the Court agrees with Judge Steger that "[m]anifest disregard of the law does not encompass alleged erroneous findings of fact by the arbitrator" [*Id.* at 13]. "It is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is well-established that 'a federal court may not conduct a reassessment

29

of the evidentiary record.'" *In re Romanzi*, 2020 WL 7975570, at *5 (quoting *The Coffee Beanery*, 2007 WL 2335135, at *2).

In order for the rebuttable presumption of good faith from Tenn. Code Ann. § 50-1-105 to apply, defendants had to show that they provided "truthful, fair and unbiased information." The presumption could be rebutted if plaintiff showed by a preponderance of the evidence that the information disclosed was:

(1) Knowingly false;
(2) Deliberately misleading;
(3) Disclosed for a malicious purpose;
(4) Disclosed in reckless disregard for its falsity or defamatory nature; or
(5) Violative of the current or former employee's civil rights pursuant to current employment discrimination laws.

Tenn. Code Ann. § 50-1-105.

After weighing the evidence, Arbitrator Sweeney found that defendants had failed to prove that the information was provided to Axalta in good faith and was truthful or fair [Doc. 54-1, p. 15]. In addition, Arbitrator Sweeney found that the evidence demonstrated that the information intentionally given to Ruddy at Axalta was deliberately misleading and made in reckless disregard of its falsity or defamatory nature [*Id.*]. Once again, defendants ask the Court to undertake the role of the Arbitrator by weighing the evidence, as Arbitrator Sweeney did in the first instance, and the Court cannot undertake such a task. *See Samaan*, 835 F.3d at 600. Thus, the Court agrees with Judge Steger's finding that the Arbitrator's weighing of the evidence with regards to defendants' actions and mental state is a finding of fact that is not reviewable by this Court. As a result, defendants' seventh objection is **OVERRULED**.

30

**IV.    Conclusion**

For the reasons stated above, defendants' objections [Docs. 53, 54] are **SUSTAINED in part and OVERRULED in part** and the Court **ACCEPTS in part and REJECTS in part** the R&R [Doc. 52]. Defendants' motion [Doc. 34] will be **DENIED**, and plaintiff's motion [Doc. 45] will be **GRANTED**. The Arbitrator's Award will be **CONFIRMED** pursuant to the FAA, 9 U.S.C. § 9. A separate judgment will enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE